**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01986-RM-STV

Brent Howe,

    Plaintiff,

v.

Government Leasing Company and Thomas Wittwer,

    Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, through counsel, submits this Opposition in response to Defendants' Motion for Summary Judgment.

## INTRODUCTION

    Brent Howe was hired by Defendant Government Leasing Company ("GLC") to be its first Chief Financial Officer ("CFO"). Plf's Statement of Additional Undisputed Material Facts ("AUMF") at ¶ 29. He was also its last CFO. AUMF at ¶¶ 27-28, 30. Although he was given the title of Chief Financial Officer, Mr. Howe spent the last year of his employment with GLC working as a bookkeeper. Plf's Response to Def's Statement of Undisputed Material Facts ("Resp. to SUMF") at ¶¶ 2, 5, 8; AUMF at ¶ 12-13. During that final year, Mr. Howe spent his time doing data entry, performing basic accounts payable and accounts receivable functions, reconciliations, scheduling payments, processing payments, following up on missed payments, submitting invoices, making check requests, and printing checks. AUMF at ¶¶ 12-17.

Defendant Tom Wittwer, GLC's owner, described the work done by Mr. Howe in the last year of his employment as "the minutia of the job" that would normally be done by low level employees. Ex. 3, GLC Dep. at 42:11-43:2, 43:15-44:1. However, Mr. Howe was not able to assign the "minutia" bookkeeping work to lower lever employees because he was not permitted to hire replacements for employees terminated by Mr. Wittwer. Resp. to SUMF at ¶¶ 7, 21; AUMF at ¶¶ 14-17. For example, after Mr. Wittwer fired Vickie Knight, an accounts payable clerk, Mr. Howe requested permission to replace her, and Mr. Wittwer told him that GLC could not afford to replace Ms. Knight, and that Mr. Howe would need to perform her accounts payable duties. Ex. 1, Plf's Resp. to Def's Discovery- ROG 7.

During the last year of his employment with GLC, Mr. Howe's primary duties were not exempt from the coverage of the Fair Labor Standards Act ("FLSA"), and he was not compensated for any of the overtime hours he worked while performing the tasks of a bookkeeper. Defendants seek summary judgment on Mr. Howe's FLSA claim, arguing that any one of four different FLSA exemptions apply.[1] Defendants are not entitled to summary judgment based on any of those exemptions. While Defendants cite to some evidence that would seem to make those exemptions applicable to Mr. Howe, merely identifying evidence associated with an exemption is insufficient to meet Defendants' burden at summary judgment. Exemptions to the FLSA are affirmative defenses, and because Defendant bears the burden of proving those affirmative defenses at trial, it must prove that one or more of the claimed

---

[1] Defendants assert that Mr. Howe is exempt pursuant to the white collar/executive exemption, the professional exemption, the administrative exemption, and the highly compensated exemption.

exemptions applied to Mr. Howe's work during the last year of his employment. Defendant has not done so, and therefore is not entitled to summary judgment on the FLSA claim.

In addition to the FLSA claim, Mr. Howe asserts alternative state law claims for breach of contract and promissory estoppel related to GLC's promise to pay him six months of severance pay if his employment was terminated under certain circumstances, including position elimination. Approximately one week before Mr. Howe was terminated, GLC's outside accountant recommended that the CFO position be eliminated and replaced with an accountant or controller level person. AUMF at ¶ 24. In fact, GLC did hire a controller to replace Mr. Howe, and has never employed a CFO since Mr. Howe's termination. AUMF at ¶¶ 25, 27-28, 30. As there are genuine issues of material fact about whether GLC eliminated the CFO position, thus triggering the obligation to pay severance to Mr. Howe, summary judgment on the breach of contract and promissory estoppel claims is not warranted.

## STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rule 56(a) provides that summary judgment should be granted if there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, a defendant moves for summary judgment to test an affirmative defense, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'" *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). "A fact is 'material' if it pertains to an element of a claim or defense; a factual dispute is 'genuine' if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party." *Gelfand*

*v. Cherry Creek Sch. Dist.*, 2009 U.S. Dist. LEXIS 48931, 12 (D. Colo. June 10, 2009) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Resolution of a Rule 56 motion is guided by the principle that

> On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.

*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## THE FAIR LABOR STANDARDS ACT

The FLSA requires that all non-exempt employees be compensated at a rate of pay of no less than the applicable minimum wage for every hour worked. 29 U.S.C. § 206(a). In addition to requiring the payment of minimum wages, the FLSA requires that all non-exempt employees be compensated at one and one-half times their regular rate of pay for all hours worked over forty in a single work week. 29 U.S.C. § 207.

### *This Court Should Apply a Broad Interpretation of the Fair Labor Standards Act to Further the Remedial Purposes of the Statute.*

The federal courts, including the Tenth Circuit Court of Appeals, have a long history of interpreting the FLSA liberally to advance its remedial purposes. *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), *superseded by statute*, 29 U.S.C. § 251 *et seq.*, (explaining that the FLSA should not be construed in a narrow, grudging manner). Congress intended the FLSA to provide broad coverage for the remedial purpose of improving "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a). Accordingly, the Supreme Court has long "construed the Act liberally to apply to the furthest reaches consistent with congressional direction . . . ." *Tony & Susan Alamo Found. v. Sec'y of*

*Labor*, 471 U.S. 290, 296 (1985).  As a corollary, Courts construe FLSA exemptions in a narrow manner.  *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008).  The burden of proof is on the employer to establish exemption from the Act.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008); *Ackerman v. Coca-Cola Enters.*, 179 F.3d 1260, 1264 (10th Cir. 1999).  Furthermore, a guiding principle of the FLSA is that exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960).  *See Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993).

### *FLSA Exemptions are Affirmative Defenses*

"FLSA overtime exemptions are affirmative defenses on which the employer has the burden of proof, and those exemptions are to be narrowly construed against the employers seeking to assert them."  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007) (internal quote marks and citations omitted); *see also Diaz v. Jaguar Rest. Group, LLC*, 2010 U.S. App. LEXIS 25361 (11th Cir. Dec. 13, 2010).  "The defendant must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption."  *Ale v. TVA*, 269 F.3d 680, 691 n.4 (6th Cir. 2001) (*quoting Roney v. United States*, 790 F. Supp. 23, 26 (D.D.C. 1992)).

### *Standards for FLSA Exemptions*

All of the exemptions applicable in this matter require a determination of the employee's "primary duty."  The FLSA regulations define "primary duty" as:

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. 541.700(a). If a defendant cannot prove that the employee's primary duty fits within the exemption, the exemption will not apply. *Ale v. TVA*, 269 F.3d at 691 n.4.

## ARGUMENT

**I. During His Last Year of Employment, Mr. Howe was Not Exempt from the FLSA.**

Neither Mr. Howe's title, nor his salary, establish that he was exempt from the FLSA. *See* 29 C.F.R. 541.2; *see also Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585-86 (6th Cir. 2004) ("The FLSA requires the employer to make FLSA exemption decisions based on the employee's actual job duties, not the employee's job title, and the good faith requirement imposes an affirmative burden.") (citation omitted). The applicability of any of the claimed exemptions to Mr. Howe can only be determined by establishing that his duties meet the requirements of the claimed exemption. There is no dispute that Mr. Howe was paid on a salary basis that satisfies the minimum salary requirements of the FLSA. Resp. to SUMF at ¶¶ 6, 22. However, Defendant cannot prove that the primary duties customarily and regularly performed by Mr. Howe during the last year of his employment fulfill the requirements of the claimed executive, administrative, or professional exemptions. Moreover, because Mr. Howe did not customarily any one or more of the exempt duties of an executive, administrative, or professional employee during the last year of his employment, the highly compensated exemption is inapplicable.

### a. The Executive Exemption.

To show that Mr. Howe is a bona fide executive employee, the defendant must prove the following: (i) that Mr. Howe's primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (ii) that Mr. Howe customarily and regularly directs the work of two or more other employees; and (iii) that Mr. Howe had the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a).

Defendants have not proven that all three prongs of this exemption apply to Mr. Howe. Defendants contend that Mr. Howe managed the accounting function; however, Defendants have not identified the specific duties that Mr. Howe allegedly performed as the manager of GLC's accounting function.  Defendants have also failed to identify the amount of time Mr. Howe spent performing those unidentified management duties.  The failure to identify his primary duties is sufficient to deny summary judgment.  Further, from April 2015 until the end of his employment, Mr. Howe's primary duties were not related to management of GLC's accounting function. During that time, he was performing simple, routine bookkeeping and clerical duties that had been performed by Vickie Knight and Jennifer Peterson, and was not working in a management capacity.  AUMF at ¶¶ 12-17, 20.  During that time, Mr. Howe was performing such duties as scheduling payments, processing payments, printing checks, following up on missed payments, and submitting invoices.  *Id.*  These are clerical duties that do not involve management of GLC.

Defendants also cannot prove the applicability of the executive exemption because of the significant factual disputes about Mr. Howe's ability to direct the work of other employees and

his ability to hire or fire employees.  Although Defendants argue that Mr. Howe supervised other employees, that fact is in dispute.  AUMF at ¶ 21.  An employee performing accounts payable and accounts receivable duties told Mr. Howe that she reported directly to Mr. Wittwer.  Resp. to SUMF at ¶ 8. Another employee, Bob McInnis, told Mr. Howe that he got his "orders from Tom."  *Id.*  When Mr. Howe was hired, he was told that all employees of GLC report to Tom Wittwer.  Resp. to SUMF at ¶ 20.  On occasions when Mr. Howe would inquire about employees' completion of accounting functions, he was told "that they could not take on a task because 'Tom was having them work on something else.'"  Resp. to SUMF at ¶ 8.

There are similar factual disputes about Mr. Howe's authority to hire or fire employees.  AUMF at ¶ 22.  To show that an employee's suggestions and recommendations are given "particular weight," the employer must show, among other things, the "frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. 541.105.  This "does not include an occasional suggestion with regard to the change in status of a co-worker." *Id*.  Defendants have failed to meet their burden on this prong of the exemption.  First, GLC admitted at the Rule 30(b)(6) deposition that is did not know if Mr. Howe was ever told if he had authority to hire or fire employees.  Resp. to SUMF at ¶21.  The facts bear out that he did not.  Mr. Howe was not satisfied with the staffing levels at GLC, but he could not act to create or fill any position without permission from both Mr. Wittwer and Mrs. Wittwer.  Resp. to SUMF at 7.  After Mr. Wittwer terminated Vickie Knight, Mr. Howe sought permission from the Wittwers to replace her, but his request was denied.  *Id.*  Mr. Wittwer told Mr. Howe that Ms. Knight would not be replaced and that Mr. Howe would need to perform her duties.  *Id.*

As there are significant factual disputes about Mr. Howe's primary duties during his last year of employment, whether Mr. Howe customarily and regularly directed the work of two or more employees during that time, and whether Mr. Howe had authority to hire or fire employees, Defendants cannot prove the applicability of the executive exemption to Mr. Howe. Therefore, Defendants are not entitled to summary judgment based on this exemption.

### b. The Administrative Exemption.

To show that the administrative exemption applies, Defendants must prove that Mr. Howe was an employee: (i) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (ii) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. Defendants cannot prove the applicability of this exemption for reasons similar to those preventing it from proving the executive exemption applied.

Defendants contend that Mr. Howe's primary "administrative" duties were "office work directly related to the management and business operations of Government Leasing." Def's MSJ at 5. This conclusory assertion is insufficient to establish that Mr. Howe is subject to the administrative exemption. Defendants have not identified any specific duties he performed that would bring him within the administrative exemption.

Defendant makes a similar conclusory assertion in an attempt to prove that Mr. Howe's primary "administrative" duty involved the exercise of discretion and independent judgment with respect to matters of significance. To meet that prong, Defendant merely states that Mr. Howe "was expected to use his professional judgment as a Certified Public Accountant to assure that

9

the books, records, financial statements and management reports produced were accurate in accordance with accepted accounting practices." Def's MSJ at 5. The problem with that argument is three-fold: (1) it is argument, and not based on any evidence or undisputed facts; (2) it is argument addressed to what Mr. Howe was *expected* to do, and does not address the duties he *actually* performed; and (3) it does not address the duties Mr. Howe did in fact perform during the last year of his employment with GLC.

As noted above, during the last year of Mr. Howe's employment, he was not performing duties that were associated with the management or business operations of GLC. Rather, Mr. Howe spent that year working in a clerical capacity. While Defendants may have desired that Mr. Howe spent that year preparing books, records, financial statements and management reports produced were accurate in accordance with accepted accounting practices, the evidence shows that his work involved the performance of simple, routine bookkeeping and clerical duties that had been performed by Vickie Knight and Jennifer Peterson, and not work involving discretion and independent judgment. AUMF at ¶¶ 12-17, 23. Mr. Howe's performance of duties such as scheduling payments, processing payments, printing checks, following up on missed payments, and submitting invoices do not fall within the administrative exemption. *Id.*

As Defendants cannot prove all of the prongs of the administrative exemption, they are not entitled to summary judgment based on that exemption.

### c. The Professional Exemption.

To show that the professional exemption applies, Defendants must prove that Mr. Howe's primary duty was the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual

instruction." 29 C.F.R. § 541.300(a)(2)(i).  Defendants argue that because Mr. Howe is a certified public accountant, he falls within the professional exemption.  That argument fails because it elevates titles over the actual duties performed.

Although certified public accountants generally meet the duties requirements of the professional exemption, 29 C.F.R. § 541.301(e)(5), Mr. Howe did not work in a position that required he be a certified public accountant.  Resp. to SUMF at ¶ 3.  In fact, Mr. Howe is not licensed as a certified public accountant in Colorado.  *Id.*  Regardless of Mr. Howe's education or training, during his last year of employment with GLC, he was not working in a capacity as a certified public accountant, or even as an accountant.  Mr. Howe spent from April 2015 to the end of his employment working in a clerical role as a bookkeeper.  AUMF at ¶¶ 12-17.  Mr. Howe's work during that period of time involved the performance of simple, routine bookkeeping and clerical duties that had been performed by Vickie Knight and Jennifer Peterson, and not work involving discretion and independent judgment.  AUMF at ¶¶ 12-17.  Mr. Howe's performance of duties such as scheduling payments, processing payments, printing checks, following up on missed payments, and submitting invoices do not fall within the professional exemption.  29 C.F.R. § 541.301(e)(5) ("accounting clerks, bookkeepers and other employees who normally perform a great deal of routine work will not qualify as exempt professionals.").

As Mr. Howe was performing clerical and bookkeeping duties, he was not performing the work of an exempt professional, and that exemption does not apply.  Summary judgment based on the professional exemption should be denied.

### d. The Highly Compensated Exemption.

The highly compensated exemption applies to an employee making $100,000 or more per year "if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrator or professional employee." 29 C.F.R. § 541.601. In order for the highly compensated exemption to apply, Defendants must prove that Mr. Howe performed any one or more exempt duties during the last year of his employment. Defendants fail to meet that burden.

As noted above, there are significant factual disputes about whether any of the duties identified by Defendant were performed by Mr. Howe after April 2015. Whether Mr. Howe performed any of the duties of an executive exempt employee after April 2015 is in dispute. *See* § I.a., *supra.* Similarly, there are factual disputes about whether Mr. Howe's primary duty met either of the two required tests for the administrative exemption. *See* § I.b., *supra.* Finally, it is undisputed that Mr. Howe's clerical and bookkeeping work after April 2015 is not covered by the professional exemption, thus rendering those duties inapplicable to the highly compensated exemption.

Due to Defendants' inability to prove that Mr. Howe customarily and regularly performed any one specific exempt duty after April 2015, the highly compensated exemption cannot be proven, and summary judgment is not appropriate.

## II. There Are Genuine Issues of Material Fact Concerning Mr. Howe's Entitlement to Severance Pay.

Mr. Howe asserts alternative claims for breach of contract and promissory estoppel against Defendant GLC based on GLC's failure to pay him severance upon the termination of his

employment.[2] Defendant contends that there never was an enforceable agreement to pay severance to Mr. Howe, and that even if there was, his termination does not trigger GLC's obligation to pay severance. Defendant GLC is wrong on both counts.

### a. GLC Promised to Pay Severance to Mr. Howe.

In July 2014, Mr. Wittwer and Mr. Howe entered into negotiations for Mr. Howe to join GLC as an employee. AUMF at ¶ 3. At the time of those negotiations, Mr. Howe was employed as the Chief Financial Officer/Controller for the Colorado Department of Public Health and Environment. AUMF at ¶ 4. During the negotiations, Mr. Howe proposed that he work for GLC in exchange for an annual salary of $150,000, benefits, a performance bonus, and a severance package. AUMF at ¶ 5. Mr. Wittwer was unfamiliar with severance agreements, and Mr. Howe explained to him that he was seeking the severance agreement to provide economic security in the event his employment was terminated due to, among other things, the elimination of his position. AUMF at ¶ 6; Resp. to SUMF at 15. Mr. Howe proposed that he be provided with one year of severance, and Mr. Wittwer countered with an offer of six months of severance. AUMF at ¶¶ 7-8. Ultimately, Mr. Wittwer sent Mr. Howe an offer of employment that excluded the severance agreement from its terms. Resp. to SUMF at ¶ 11. After receiving that email, Mr. Howe called Mr. Wittwer told him that the offer did not include the agreement to pay six months of severance, to which Mr. Wittwer responded "it will be taken care of." Resp. to SUMF at ¶ 11. Mr. Wittwer does not deny that this phone call occurred. Resp. to SUMF at ¶ 14. Mr. Howe and

---

[2] In the Motion for Summary Judgment, Defendants devote a section to arguing that the severance claims against Wittwer should be dismissed. Def's MSJ at § C, p. 8. Notably, the Complaint clearly indicates that only the FLSA claim is asserted against all defendants, and the contract/promissory estoppel claims are only asserted against GLC. *See* Complaint, Doc. 1 at 6-7. As the contract/promissory estoppel claims were never asserted against Mr. Wittwer individually, Mr. Howe does not need to respond to Defendants argument.

his wife discussed GLC's agreement to provide a severance agreement prior to his acceptance of the position. AUMF at ¶ 10. Mr. Howe then resigned his position with the State of Colorado and accepted employment with GLC. AUMF at ¶ 9.

The emails and discussions between Mr. Wittwer and Mr. Howe in July 2014 are sufficient to create an agreement to pay severance. An oral contract to pay severance is equally as enforceable as a written contract. *See Chidester v. Eastern Gas & Fuel Associates,* 859 P.2d 222 (Colo. App. 1993). Similarly, statements that disclose a promissory intent or that can be reasonably construed by an employee to constitute a commitment by an employer can support a claim for promissory estoppel. *See Soderlun v. Public Serv. Co.*, 944 P.2d 616, 621 (Colo. App. 1997). Here, Mr. Howe proposed that he receive one year of severance, which Mr. Wittwer countered at six months of severance. When there was no mention of severance in the email containing the offer, Mr. Howe called Mr. Wittwer about that omission, and Mr. Wittwer responded that it would be taken care of. The negotiations and communications between the parties are sufficient to create a contract or an enforceable promise to pay severance.

### b. Mr. Howe's Termination Triggered the Obligation to Pay Severance.

Pursuant to the agreement between GLC and Mr. Howe, severance was due if Mr. Howe was terminated because of a position elimination. Resp. to SUMF at 15. The undisputed facts here establish that Mr. Howe's position was eliminated, thus triggering GLC's obligation to pay severance.

On March 23, 2016, approximately one week before Mr. Howe was terminated, GLC's outside accountant recommended to Mr. Wittwer that the company eliminate the Chief Financial Officer position. AUMF at ¶ 24. The accountant recommended that the Chief Financial Officer

position be replaced with "a good accountant/controller level person" at about half the price. *Id.* After terminating Mr. Howe, GLC hired Doug Hayler to work as the company's controller. AUMF at ¶ 25. Mr. Hayler was to be paid a salary of $80,000/year, or about half of the cost of Mr. Howe's salary to GLC. AUMF at ¶ 26; Resp. to SUMF at ¶ 6. Mr. Hayler was not hired to be the Chief Financial Officer, and did not work as the Chief Financial Officer of GLC. AUMF at ¶ 27. Nor was GLC seeking to fill the Chief Financial Officer during Mr. Hayler's tenure with the company. AUMF at ¶ 28. After Mr. Hayler resigned his employment, GLC did not hire anyone to fill the Chief Financial Officer position, and currently does not employ a Chief Financial Officer. AUMF at ¶ 30.

The facts above establish that GLC eliminated the Chief Financial Officer position when it terminated Mr. Howe's employment. The decision to eliminate the position is sufficient to entitle Mr. Howe to the severance payment the parties negotiated. These facts are sufficient to warrant a trial on these claims, and summary judgment should be denied.

### III. Mr. Howe's Claims Are Not Frivolous or Groundless.

Defendant's final argument in the motion for summary judgment is that Mr. Howe's claims are substantially frivolous and groundless, and that he should be ordered to pay all costs and fees incurred by Defendants. Defendants' position is meritless. "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (describing frivolous claims as "fanciful," "fantastic," and "delusional," and holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are

judicially noticeable facts available to contradict them"). Contrary to Defendants' arguments, Mr. Howe's case is well-grounded in fact and in law, and there is sufficient evidence supporting his claims. "The burden of showing that the case was groundless rests on the defendant." *Ceballes v. W. Forge Corp.*, Civil Action No. 04-cv-02650-MSK-CBS, 2007 U.S. Dist. LEXIS 58218, at *4 (D. Colo. Aug. 9, 2007) *citing Butler v. Rapides Foundation*, 365 F.Supp.2d 787, 792 (W.D. La. 2005). Defendant cannot meet that burden, and the requested relief must be denied.

## **CONCLUSION**

The foregoing establishes that there are sufficient factual disputes remaining in the case that must be resolved by a jury. Accordingly, Defendant is not entitled to summary judgment, and the motion should be denied.

Respectfully submitted this 11th day of July, 2017.

CORNISH & DELL'OLIO, P.C.

s/ Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
PHONE (719) 475-1204
FAX (719) 475-1264
Email: ikalmanowitz@cornishanddellolio.com
Attorneys for Plaintiff

TORBET TUFT & McCONKIE LLC

s/David G. McConkie
David G. McConkie, #39864
2 N. Cascade Ave., Suite 320

                                            Colorado Springs, CO 80903
                                            719-475-9300
                                            719-475-9311 (fax)
                                            mcconkie@torbetlaw.com

## CERTIFICATE OF SERVICE

       I hereby certify that on this 11th day of July, 2017, I electronically filed with the Clerk of Court using the CM/ECF system a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was sent by email:

Richard J. Gleason
Thomas J. Overton
165 S. Union Blvd., Suite 542
Lakewood, Colorado 80228
303-832-1120
303-832-5303 (fax)
rick.gleason@overtonlawfirm.com
tom.overton@overtonlawfirm.com

                                            s/Esther Kumma Abramson
                                            Esther Kumma Abramson